UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

              - against -                      **MEMORANDUM & ORDER**
                                                            18-CR-104 (PKC)

JAMES BOCCANFUSCO,

                Defendant.
-------------------------------------------------------X
PAMELA K. CHEN, United States District Judge:

Defendant James Boccanfusco seeks compassionate release and a sentence reduction pursuant to 18 U.S.C. § 3582(c). (Defendant's Motion for Compassionate Release ("Def. Mot."), Dkt. 45.) For the reasons that follow, the Court denies that application.

## BACKGROUND

### I. Defendant's Conviction and Criminal Conduct

On May 24, 2018, Defendant Boccanfusco pled guilty to six counts of bank robbery. (Presentence Report ("PSR"), Dkt. 25, ¶ 1; *see id.* ¶¶ 2–7.) During a ten-day period between January 16 to January 26, 2018, Defendant and a co-conspirator robbed or attempted to rob six different banks in New Jersey and New York, netting a total of $7,200. (*Id*. ¶¶ 10–15; Response in Opposition to Defendant's Motion ("Gov. Opp."), Dkt. 47, at 2.) Defendant was the getaway driver for each of the robberies. (*See* PSR, Dkt. 25, ¶¶ 10–15.)

### II. Defendant's Sentencing and Criminal History

At sentencing, Defendant faced a Guidelines range of 151 to 188 months, based on a total offense level of 29 in Criminal History Category VI. (*Id.* ¶ 121.) Between 1998 and 2013, Defendant was convicted of possession of counterfeit currency, multiple bank robberies using the same modus operandi as in this case, and theft by deception involving the cashing of forged checks

1

at various banks. (Gov. Opp., Dkt. 47, at 9; PSR, Dkt. 25, ¶¶ 68–72.) In January 2015, Defendant was charged with seven counts of bank robbery in the Southern District of New York ("SDNY").[1] (PSR, Dkt. 25, ¶ 73.) Defendant pled guilty in that case and was sentenced, in March 2017, to time served, which amounted to 781 days' incarceration. (*Id.*); *see also* Judgment in a Criminal Case, *United States v. Boccanfuso*, 15-CR-341 (LTS) (S.D.N.Y. Mar. 17, 2017), ECF No. 116. Notably, Defendant committed the bank robberies in this case while on supervised release in his SDNY case.[2] (*See* PSR, Dkt. 25, ¶ 75.) Based on this criminal history, Defendant qualified as a career offender at the time of sentencing in this case. (*Id.* ¶ 77.)

Although the applicable Guidelines range was 151 to 188 months, the Government urged the Court to instead adopt the Guidelines range of 70 to 87 months, which had been "contemplated in the parties' Plea Agreement" based on a miscalculation of Defendant's Criminal History Category as IV instead of VI. (Gov. Opp., Dkt. 47, at 2 (noting that, "during the Probation Department's PSR investigation, the Probation Officer uncovered additional information and convictions that underscored the depth of the defendant's criminal history").) The Government, however, argued for a sentence at the "high-end of the" 70- to 87-month range. (*Id.* (citing Government Sentencing Memorandum, Dkt. 34, at 2).) Based largely on the Defendant's personal history and characteristics, the nature of the bank robberies, and Defendant's role in them, the

---

[1] In the SDNY case, Defendant is identified by the last name "Boccanfuso," instead of "Boccanfusco," as here. *See United States v. Boccanfuso*, 15-CR-341 (LTS) (S.D.N.Y. 2015). Defendant is similarly identified in the Bureau of Prisons ("BOP") online database as "Boccanfuso." *See* https://www.bop.gov/inmateloc/.

[2] As a result, Defendant was charged with violating the conditions of his supervised release in the SDNY case. *See United States v. Boccanfuso*, 15-CR-341 (LTS) (S.D.N.Y. 2015). On December 11, 2018, the Honorable Laura Taylor Swain sentenced Defendant to 18 months, to run consecutively to the undischarged portion of his 70-month sentence in this case, based on Defendant's guilty plea to Specification One of the Violation of Supervised Release ("VOSR") Report. *See* Judgment in a Criminal Case, *United States v. Boccanfuso*, 15-CR-341 (LTS) (S.D.N.Y. Dec. 11, 2018), ECF No. 128.

Court sentenced him to 70 months' incarceration, *i.e.*, the bottom of the plea agreement's Guidelines range and less than half of the bottom of the applicable Guidelines range of 151 to 188 months. (*See* Judgment, Dkt. 35; 11/15/2018 Minute Entry.)

### III.  Defendant's Compassionate Release Application

On January 26, 2021, Defendant filed the instant motion for compassionate release, seeking a reduction of his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Def.'s Mot., Dkt. 45.) In support of his application, Defendant relies on the "totality of his present circumstances" (*id.* at 8), namely: (1) the rate of COVID infections and otherwise harsh conditions at FCI Ray Brook, the Bureau of Prisons ("BOP") facility where he is incarcerated (*id.* at 3–6); (2) Defendants' parents having recently obtained "full and permanent" custody of his nine-year-old daughter (*id.* at 7–8); (3) Defendant having served all but 17 or 18 months of his 70-month sentence (*id.* at 11); and (4) Defendant's generally positive conduct in prison, *e.g.*, engaging in "the limited programming" and not incurring any disciplinary infractions (*id.* at 10–11). Defendant asks that his sentence be reduced to time served and that he be "allow[ed] [] to begin serving his consecutive 18-month violation of supervised-release sentence out of SDNY."[3] (*Id.* at 12.)

---

[3] It is worth noting that Defendant seeks a sentencing reduction in this case so that he can begin serving his 18-month VOSR sentence in the SDNY case. (Def.'s Mot., Dkt. 45, at 2 ("Boccanfusco respectfully seeks a reduction of his 70-month sentence to time-served . . . so that he may begin serving his undischarged 18-month term of imprisonment for violating his supervised release [in SDNY]").) However, there is no reason to believe that Defendant will be permitted to serve his VOSR sentence in the SDNY, as opposed to FCI Ray Brook. Indeed, given the current restrictions on inmate movement due to the COVID-19 pandemic, it seems unlikely that the BOP will opt to move Defendant from FCI Ray Brook to a facility in the SDNY to serve his 18-month VOSR sentence. In any event, the possibility that Defendant might be transferred to a BOP facility in the SDNY does not affect the Court's decision with respect to his compassionate release request in this case.

## DISCUSSION

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Applewhite*, 17-CR-142 (MKB), 2020 WL 7356615, at *3 (E.D.N.Y. Dec. 15, 2020) (quoting *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)). One such exception is provided by 18 U.S.C. § 3582(c)(1)(A)(i), which authorizes "a court to reduce a defendant's term of imprisonment if it finds that 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 422 (S.D.N.Y. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).[4] Notably, even where a movant demonstrates extraordinary and compelling reasons, the court must consider whether the sentencing factors set forth in 18 U.S.C. § 3553(a) also support release. *See Applewhite*, 2020 WL 7356615, at *3 (citing *United States v. Roney*, 833 F. App'x 850, 853 (2d Cir. 2020) (summary order)); *see also Roney*, 833 F. App'x at 853 (finding it unnecessary to determine whether appellant had shown extraordinary and compelling reasons under Section 3582(c)(1)(A)(i) "because, even assuming *arguendo* that he has, we discern no abuse of discretion in the district court's conclusion that release is nevertheless unwarranted upon consideration of the § 3553(a) factors")).

Here, the Court finds that Defendant Boccanfusco has failed to demonstrate his entitlement to compassionate release either under Section 3582(c) or based on the Section 3553(a) factors. First, while the Court "takes seriously the threat posed by the pandemic to incarcerated individuals,"

---

[4] Section 3582(c)(1)(A) requires a defendant to fully exhaust his administrative remedies with the BOP before applying for relief from the court. 18 U.S.C. § 3582(c)(1)(A). There appears to be no dispute in this matter that Defendant has satisfied the exhaustion requirement. (*See* Def. Mot., Dkt. 45, at 9–10 (arguing that Defendant has "satisfied the only potential procedural hurdle" by sending a letter requesting compassionate release to the FCI Ray Brook warden on May 12, 2020 that went unanswered); Gov. Opp., Dkt. 27, at 4–5 (quoting 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement but omitting any argument that Defendant has failed to exhaust administrative remedies).) The Court therefore assumes that Defendant has fully exhausted administrative remedies as required by Section 3582(c).

4

*Applewhite*, 2020 WL 7356615, at *3, especially given the increase in the infection rate at FCI Ray Brook over the past few months,[5] Defendant has failed to demonstrate or even claim that he is at heightened risk of contracting the virus or suffering more severe consequences from it than any other inmates at the prison. As Defendant acknowledges, he "lacks a chronic medical condition that heightens his susceptibility to severe COVID-19[.]" (Def. Mot., Dkt. 45, at 6.) Indeed, as the Government argues, Defendant "is in better health, and at lower risk of a serious reaction to COVID-19, than the vast number of defendants with health conditions who have been denied similar requests for compassionate release." (Gov. Opp., Dkt. 47, at 8 (citing cases denying compassionate release to defendants with underlying health issues).) The mere possibility or speculation that Defendant might contract COVID-19 or suffer serious adverse consequences from it does not constitute an extraordinary or compelling reason to grant compassionate release. *See* Order Denying Motion to Reduce Sentence at 2, *United States v. Flores*, 15-CR-152 (RRM) (E.D.N.Y. Apr. 12, 2020), ECF No. 47; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted)). Nor do the admittedly severe restrictions and difficult conditions that exist at FCI Ray Brook due to the pandemic. *United States v. LaBarca*, 11-CR-12 (RMB), 2021 WL

---

[5] Though unnecessary to the Court's ruling, it is worth noting that, according to BOP data, although 132 inmates have tested positive in total for COVID-19 at FCI Ray Brook, there are currently only two active cases of COVID at the facility. *See* https://www.bop.gov/coronavirus/ (last visited Feb. 24, 2021). Even though Defendant disputes the completeness and accuracy of this data (Defendant's Reply, Dkt. 48, at 1–2), the Court finds that this data supports the conclusion that the facility has implemented precautions to prevent the spread of the virus and that those efforts are largely working.

195996, at *5 (S.D.N.Y. Jan. 20, 2021) (denying compassionate release request based on restrictive COVID-related prison conditions that are "true for all prisoners").

Second, the fact that Defendant's parents have obtained custody of his nine-year-old daughter does not provide an extraordinary or compelling reason justifying his early release. If anything, the fact that Defendant's daughter has been removed from a reportedly unstable and dangerous situation and is now being well-cared for by his parents undercuts the need for Defendant to be released to take on this responsibility. In fact, at the time of sentencing, Defendant was not living in the same state as his daughter. (PSR, Dkt. 25, ¶¶ 91–93 (reporting that, after Defendant and his daughter's mother separated, the mother moved with the daughter to Oklahoma, where Defendant could not visit due to his supervision restrictions, but where Defendant's father later moved in order to maintain a relationship with his granddaughter).) While the Court certainly appreciates that Defendant wants to be reunited with his daughter sooner and that she presumably would benefit from having her father living with her, that understandable—indeed, universal— desire does not constitute an extraordinary or compelling reason justifying compassionate release or a sentencing reduction.

Third, the fact that Defendant has served more than two-thirds of his 70-month sentence also does not warrant early release. As discussed, Defendant's sentence constituted a significant downward variance from the applicable Guidelines of 151 to 188 months, due in large part to the Government's consent to the Court using a substantially lower Guidelines range as its starting point in determining an appropriate sentence. Defendant further benefitted from the Court's weighing of the sentencing factors to impose a sentence at the very bottom of that range, resulting in a sentence that is less than half of the bottom of the applicable Guidelines range, which started

6

at over twelve years. Therefore, the Court finds that there is no justification for permitting Defendant to serve less than his full (already-lenient) sentence.

In sum, the Court finds that none of the grounds that Defendant relies on in his application, either alone or in combination, constitutes an extraordinary or compelling reason justifying compassionate release or a reduced sentence under Section 3582(c).

The Court also finds that application of the Section 3553(a) sentencing factors does not support Defendant's early release from custody. As discussed, Defendant has already benefitted from a lenient sentence, especially given his career offender status. Further reducing his sentence would not satisfy any of the purposes of sentencing, including the need for the sentence to reflect the seriousness of the crime, provide just punishment for the offense, and promote respect for the law. 18 U.S.C. § 3553(a)(2)(A). Similarly, a sentence reduction would not serve the significant need for specific deterrence that still exists in this case, nor would it protect the public from future harm by Defendant. *Id*. § 3553(a)(2)(B), (C). Lastly, the fact that Defendant has taken some classes and not incurred any disciplinary infractions while incarcerated this time, while a positive sign, does not constitute extraordinary rehabilitation so as to justify a sentencing reduction.

## CONCLUSION

For the reasons stated above, the Court denies Defendant Boccanfusco's motion for compassionate release and a sentence reduction.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 24, 2021
      Brooklyn, New York